MICHAEL C. DUNN v. F. A. SUBLETT, ADM'R.

Where three persons entered into a contract to the effect that two of them, in consideration of certain money advanced by the third, conveyed to him one-third interest in certain land claims, in consideration of the use of the money advanced, and stipulated that they would refund the said sum out of the first moneys arising from the first sales of any portion of the lands, and to secure the said reimbursement of the said proceeds, mortgaged their two-thirds of said land claims, to remain so motgaged until full and complete reimbursement of the said sum " as aforesaid," one of the two having died, it was held that the contract was a claim for money against his estate, which might be established by suit, although there was no averment that any of the lands had been sold ; and it was said to be such a claim for money, as the law requires to be authenticated and presented to the administrator for allowance, &c.

See this case as to claims, generally, against an estate, which are not mature, or are payable on a contingency, or out of a particular fund.

Where a claim against an estate is authenticated by the affidavit of a person who does not purport to be the owner thereof or the agent of the owner, if the administrator would reject the claim on that ground, he must state such cause specially in his rejection ; and cannot raise it, for the first time, when sued for the establishment of such claim.

Error from San Augustine.   The tripartite contract between Houston, Sublett and Dunn was made a part of the petition, and was as follows :

Before me, Charles E. Greneaux, Parish Judge, and ex-officio Notary Public, in and for the parish of Natchitoches, in the State of Louisiana, and in presence of the undersigned witnesses, personally appeared Phillip A. Sublett and Samuel Houston, both of the State of Coahuila and Texas, in the Republic of Mexico, who declared, that for the consideration hereinafter expressed, they have bargained, sold, transferred and conveyed, and that by these presents, they do bargain, sell, transfer and convey to John R. Dunn, of the parish of Natchitoches, aforesaid, his heirs and assigns, forever, one undivided third of certain land claims in the said State of Coahuila and Texas, and herinafter described, to wit : (Here were described land claims amounting to twenty-seven leagues, described as conveyed to said Houston and Sublett.)   One undivided third of which is so as aforesaid transferred and conveyed, by the said Sublett and Houston, to the said John R. Dunn.   In consideration whereof, the said John R. Dunn has advanced to the said Philip A. Sublett and Samuel Houston the sum of seventeen hundred and seventy-eight dollars, which they hereby acknowledge to have received.   And it is further stipulated and agreed upon, by and between the parties hereto, that the said Sublett and Houston shall refund to the said John R. Dunn, the said sum of seventeen hundred and seventy-eight dollars, out of the first moneys arising from the first sales of any portion of the above described lands ; and in order to secure to the said Dunn, the true and punctual reimbursement of the said sum, out of the proceeds of the first sales, as aforesaid, the said

Sublett and Houston hereby mortgage, hypothecate and specially affix their and each of their respective portions, in the above enumerated and described lands, which are to remain mortgaged to the said John R. Dunn, his heirs and assigns, until full and complete reimbursement of the said sum of seventeen hundred and seventy-eight dollars, as aforesaid. The said Sublett and Houston further covenant and agree that they will subtract no part of the said lands, as aforesaid hypothecated to the said Dunn, to their own individual or private use, or that of either of them; and they further agree and bind themselves to enter into no land speculation whatever, without leaving it to the option of the said Dunn, to be interested in it, on the same terms and conditions as stipulated in the present act, in relation to the claims before mentioned. The said Philip A. Sublett and Samuel Houston further covenant and agree that they will take upon themselves the labor and trouble of locating the titles mentioned in the present act, upon the said Dunn advancing the charges for surveying and all reasonable expenses for putting the parties mentioned in this act in possession of the said lands; which they also agree to refund to him, in the same manner and under the same conditions, that the sum first mentioned is to be reimbursed. Dated in 1833.

There was no averment that any sales had been made, nor that the obligors had refused or neglected to make sales, as contemplated by the parties.

*Henderson & Jones*, for plaintiff in error. I. The provision of payment, contained in the agreement between the parties, does not limit the indebtedness, but only provides a mode for its payment, which was intended as a security.

II. If it were true, that the debt was not due, that was no ground for dismissing this particular suit. The claim was a moneyed claim against the estate of Sublett, deceased; and it was required to be presented to the administrator. The Statute says that all claims for money shall be presented; and in case of their rejection, it is necessary to bring suit on them, to

have them established. If this is not done the claims are barred. Wherefore the plaintiff could not do otherwise than sue. And in this suit, he does not ask for the premature payment of the claim, but merely "that judgment may be rendered to operate as an acknowledgment of said claim."

*O. M. Roberts*, for defendant in error. As a suit to recover specific judgment for a certain amount of money, to stand as an acknowledged claim "against said estate," as prayed for, the petition is clearly bad; for, 1st. The partnership land only, and not the estate generally is bound for those advancements. 2d. There is no averment that any money has been realized out of said lands, which alone was the contingency upon which an obligation to pay the money back could arise. This case is different from the case of Graham v. Vining, (1 Tex. R. 639,) in this, that there was an existing debt (in that case) which constituted a claim for money due against the estate generally, certainly and unconditionally, with a specific lien upon particular property. In this it may never be due, and only the land of the partnership is bound.

If the account had been drawn up so as to indicate it as a claim arising out of and attaching to the land, to be paid, if ever, when that amount should be realized out of the particular lands, and sworn to as such contingent claim, then the administrator could have allowed the claim, if he thought the advancements just, without binding the estate generally; and had it been so presented, then the only question which could have arisen would have been as to whether the advancements had been made or not. The allowance of the claim in this shape might be necessary to enforce the lien of Dunn in the Probate Court, (under the 1168th Art. Hart. Dig.)

But it is submitted, that the claim was not so presented, nor has the suit been brought with such legitimate object; and therefore the administrator should not pay the costs of this suit.

The case of Hansell v. Gregg, (7 Tex. R. 223,) estab-

lishes that the affidavit may be made by the attorney who was presumed to know the facts, and the objection not being made to the person who made it, but to the fact that the claim had been paid, it was held that an objection could not afterwards be taken to the person who made it.   The facts in this case are different.   John A. Greer makes the affidavit, who does not profess to be agent or attorney, or to be interested in the matter or to have transacted the business, or had any connexion with it whatever.   And the fact that upon affidavit being made by any body, and its acknowledgment by the administrator and Probate Judge, gives the claim the force of a judgment, (Moore v. Hardison, 10 Tex. R. 467,) requires that the subject should be guarded so far as practicable for the safety of heirs and creditors, whose interest (experience here proves) the administrator should not only be protected in defending, but also restrained from abusing.

It is therefore submitted that the person making the affidavit should expressly aver (unless it reasonably otherwise appears) his connection with the matter, so as to give effect and pertinency to that part of the affidavit which asserts "that all "legal offsetts, payments and credits known to the affiant have "been allowed." (Hart. Dig. Art. 1158.)

HEMPHILL, CH. J.   This suit, by Michael C. Dunn, only heir of John R. Dunn, deceased, is brought to establish a claim against the estate of Philip A. Sublett, deceased, which had been rejected by the defendant, F. B. Sublett, as his administrator, and which claim is founded on a tripartite contract between the said John R. Dunn, the said Philip A. Sublett, and Sam Houston, by which the said Sublett and Houston sold and conveyed to the said John R. Dunn, an undivided third of certain land claims described in the agreement, in consideration of which the said John R. Dunn advanced to the said Sublett and Houston, the sum of seventeen hundred and seventy-eight dollars; and it was further stipulated that the said Sublett and

Houston should refund to the said John R. Dunn, the said sum of money, out of the proceeds of the first sales of any portion of the lands; and to secure payment out of the first sales, as aforesaid, the said Sublett and Houston hypothecated and mortgaged their respective portions of the said lands, to remain under such mortgage, until the complete reimbursement of the said sum of seventeen hundred and seventy-eight dollars; further covenanting that they would not subtract any portion of the lands so mortgaged, to their individual or private use; and the said Sublett and Houston agreed to locate the said lands, on the said Dunn's advancing the charges and expenses, to be refunded in the same manner and on the same conditions that the sum first mentioned was to be reimbursed. The sum subsequently advanced is alleged to be sixteen hundred and twenty-eight dollars, and this was formally acknowledged by Sam Houston, one of the obligors, before William Christy, a Notary Public in the city of New Orleans.

To each of the instruments, that is, the original contract and the acknowledgment of the last sum advanced, is attached or endorsed an affidavit, by John A. Greer, that the claim is just, and that all offsetts, credits and payments, known to the affiant, have been allowed.

It is alleged that the claim was presented to the administrator and rejected; that the said Sublett and Houston have not paid the said sums of money, or any part of them, though often requested; and judgment is prayed, to operate as an acknowledgment of said claims, and for costs. The demurrer by defendant was sustained and petition dismissed.

Were these such claims for money as should, under Art. 1156, Hart Dig., have been presented to the administrator? This is a question of some difficulty. The Section declares that every claim for money against a testator or intestate shall be presented to the administrator, without discriminating between those due and those not due. Whether the Legislature intended any such distinction is a point upon which there might be, perhaps, some difference of opinion. The terms are suffi-

ciently comprehensive to embrace both classes, and such construction would accord entirely with the spirit of the provision, and the dictates of justice, and equal right.   It will perhaps be found not very convenient, under this view, to carry all the provisions of the Statute, requiring as speedy administration as may be consistent with the rights of creditors and heirs, into full effect, where many of the debts may not arrive at maturity until some time in the future.   In New York, by Statute, no distinction is allowed between debts due and those not due, except that from the latter there is a rebate of the interest for the time unexpired.   In a certain sense, no distinction is made in the administration of assets, under the general principles of English law, between debts due and those not due. At least such is the rule, where all the creditors are brought into equity by bill, that the assets may be distributed, according to established legal principles, to all the creditors, in the due course of administration.   (The effect of a creditor's bill is produced in this State, by Statute requiring all claims to be brought before the County Court that they may receive a distributive share of the funds.)   This creditor's bill lies as well by a creditor whose debt is payable *in futuro*, as when it is *in presenti*, if it be *debitum in presenti, solvendum in futuro*.   (2 Younge & Collier, 13, 17 ; 1 Story Equity, Sec. 547.)

This subject is pretty fully discussed in the case of the United States v. The State Bank of North Carolina, (6 Peters, 29.) The question of the priority of debts due to the Government of the United States, as arising under certain Statutes, was involved ; and a construction was given, that this priority was not restricted to debts whose day of payment was passed, but extended also to such as were payable at a future day.   The right of priority, in cases where there was an assignment in favor of creditors, was the special question for decision ; but the discussion and illustration assumed a wider range.   The phrase "debts due to the United States" had been used in the Statutes, and a construction was given to the word "due" as used in such connection.   It was said to be sometimes used to

express a state of indebtment, and then it is equivalent to owed or owing, and sometimes to express the fact that the debt has become payable ; that in the clause of the Act declaring that the priority of the United States shall attach, "where the "estate of any deceased debtor shall be insufficient to pay all "the debts due from the deceased," the word "due" is used as synonymous with owing, and that, "in the settlement of the "estates of deceased persons, no distinction is ever taken be-"tween debts which are payable before or after their decease ; "the assets are equally bound for the payment of all debts ; "the insufficiency spoken of in the Act, is an insufficiency, not "to pay a particular class of debts, but to pay all debts of every "nature ; that the term "due" includes all debts, whether "payable *in presenti* or not, and that "debts due to the United "States," as used in this Act, means debts owing to the United "States."

The effect of this decision is, that a debt, owing to the United States, would have priority over other debts of a deceased insolvent, although such debt might not be payable until a future day, on the general principle, that in the settlement of estates, no distinction is made between debts payable now or at a future day, and that debts owing, though not matured, from the deceased, may be said to be due to his creditors.

By the laws of England, and of most of the sister States, a specialty, or debt by bond, has priority over debts by simple contract, and an executor or administrator is bound to pay such debt before a debt by simple contract, although this may be past due, and the bond be not yet due. (2 Williams on Ex'ors, p. 876.) This would doubtless depend on circumstances, and would not be enforced, unless there be a deficiency of assets to satisfy all the debts. (2 Younge & Collier 13, 17.) But if there be two specialties, one due and the other not yet due, the executor must not pay the latter before the former. It appears from these authorities, that debts not due are, by the English law, entitled to consideration in the settlement of estates ; and as there is much reason and sound policy in the rule, and as

Dunn v. Sublett.

such rule is deducible, on the most fair and reasonable principles of construction, from our Statute, we cannot hesitate as to its adoption, and could accede to no other, unless the language were such as to show that such must have been the intention of the Legislature. The County Court must of course exercise some discretion in causing the estate to be so administered as to satisfy the creditors, with the least possible sacrifice of property, by sale to meet the various claims against the succession ; but I forbear to discuss this subject as, although very important, and having some remote connection, it is not immediately involved in the cause. But the debts to which the authorities cited have reference, and which are included under the statutory phrase of " claims for money," are debts which, though not matured, yet will certainly become due in the future, and not to debts depending on some contingency which may never happen. As, for instance, debt on a bond for indemnity, is one payable on a condition which may never be broken, and it is not such as may be said to be owing by the deceased, in such sense as to be an immediate burthen on the assets, or to be paid before a simple contract debt under laws which gave bonds priority. (2 Williams on Ex'ors, 878, 1149, 1150.)

Is this such a debt as will certainly become due? For, if not, its establishment as a claim against the estate would be, if not improper, at least fruitless, as it could not be permitted that the assets should be subtracted from debts which are due, and set apart for those which are contingent and may in fact never become debts.

But this debt has not this character of contingency. It cannot be pretended that there is no obligation to refund, unless the land is actually sold, and that this sale may be deferred indefinitely, at the pleasure of the obligors. This was no uncertain debt against Philip A. Sublett, which could not have been enforced against him in his lifetime. It will be admitted, of course, that if he and his co-obligor had sold the lands, the debt must have been paid out of the first proceeds, otherwise

liabilities, general and special, would have arisen. But it is equally clear, that if they refused to sell, after sufficient delay and reasonable demand, on the part of the plaintiff, he might have caused them to be sold under judicial process, for the satisfaction of the debts. The payment as provided for, out of the sales of the lands, was for the benefit of the debtors, to facilitate the means of reimbursement, and not to give them the option whether they would pay or not, or even to allow them unreasonable delay in the discharge of the debts ; for if they would not pay voluntarily, nor make efforts to pay, their obligation could be enforced at law. The debt did not depend on possibilities or contingencies. It was not to arise on some future, possible breach of the agreement. But it was a fixed and certain obligation. Consequently the claim was palpable, tangible and substantial, not uncertain, remote or contingent.

How this claim may be enforced, I shall not particularly examine, as the right of the co-obligor might be involved in such proceedings, and as he is not a party, and has not been heard in this suit. The only question here is, whether this is such a claim for money, so certain and fixed in its character, as should be presented to the administrator. And we are of opinion that it is.

As to the objection that the allowance would make the debt payable out of the general assets of the estate, we are of opinion that the judgment would not affect its character in this particular ; it would merely give the claim the force that it would have, if allowed by the administrator and approved by the Chief Justice ; and such allowance could extend no further than to admit that it is a claim against the deceased, with such liabilities, general or special, on his estate, as are attached to it by law.

We are of opinion that this claim could not be rejected by the administrator, on the ground that it was not due, or that provision had been made for payment out of a particular fund. Nor do we deem it a sufficient ground for rejecting, that the affidavit was made by John A. Greer, without naming himself

the agent or attorney of the plaintiff. The rejection is not placed on that ground, and the presumption is that he was such agent or attorney. The Statute attaches a high, perhaps an undue importance to the affidavit for the authentication of claims; so much so as to render the allowance or approval without it, of no force or effect. There may be and frequently are cases in which the administrator and Chief Justice have more knowledge of the claim, than the holder, who may be an administrator himself; and it would be giving great force to a formality, if allowed, under such circumstances, to defeat the claim of a creditor. But the Statute has not declared by whom the affidavit shall be made. On principle, it may be said, that this should be by the owner or agent, as most likely to have a knowledge of the facts to be verified. This would not, however, be always the case. The owner might have no personal knowledge of a claim, though just and capable of proof by unimpeachable evidence. The fact is, though the Statute gives such importance to the affidavit, and though, to a certain extent, it may protect estates from unfounded claims, yet it is not conclusive, nor in any degree binding on the administrator. He must, if not satisfied, look to other sources for information, and the affidavit would be no defence to him, if the claim were without any just foundation. This would be more especially the case, if his allowance had a decisive effect in establishing the claim; but it does not, for his act, unless followed by the approval of the Chief Justice, is nugatory. If the administrator is satisfied that the claim is not presented by a person who has competent authority, sustained by an affidavit made by the proper person, or one who has the means of knowing the facts, he may reject the claim on that ground; but if the rejection be general, it will be presumed to be on the merits, and not for the want of proper authentication, unless this be wanting in some of the requisites especially prescribed by the law. (7 Tex. R. 228 ; 10 Id. 199; 11 Id. 94.) And, as the Statute has not declared by whom the affidavit shall be made, and as the presumption is, that the rejection was not for the want of

authority or knowledge in the person who made the affidavit, we are of opinion that upon this ground, the petition was not open to exception, and that the judgment for the demurrer and dismissing the petition must be reversed; and the same is accordingly so ordered and cause remanded.

Reversed and remanded.