ANDREW C. WALTERS, ADM'R v. OBADIAH PRESTIDGE.

The court quoted the 49th and 50th sections of the act to regulate proceedings in the county courts, relating to the estates of deceased persons, and reviewed the previous decisions, and *held*, that the affidavit of authentication must state that "*the claim is just, and that all legal offsets, payments, and credits known to the affiant, have been allowed*," or equivalent words must be employed. (Paschal's Dig., Arts. 1309, 1310, Notes 483, 484.)

It is not enough to say, "the within account, as charged against the estate of

L P, is correct and just, after allowing all proper credits, to the best of his knowledge and belief." This omits "offsets and payments," and employs no equivalent words. (Paschal's Dig., Art. 1309, Note 483.)

The claim, "properly authenticated," is a condition precedent to the action of the administrator, as well as to a suit upon the claim. And this fact must be averred in the petition. (Paschal's Dig., Art. 1310, Note 484.)

The 49th section is a limitation upon the authority of the administrator or executor to *allow*, and of the chief justice to approve, the claim, until authenticated by the affidavit therein prescribed. And the 50th section is a limitation upon the right of the holder to sue upon his claim, unless it has been presented, properly authenticated and rejected. (Paschal's Dig., Arts. 1309, 1310, Notes 483, 484.)

"Offsets, payments, and credits" were intended to comprehend every claim for money, of whatever character, existing in favor of the testator or intestate, and every right or equity which, if allowed, would reduce the claim presented. (Paschal's Dig., Art. 1309, Note 483.)

The word "credits" has a limited as well as a general meaning; and, as used in the statute, it does not include "offsets," as well as "payments." (See illustration in the statute about discounts and set-off, Paschal's Dig., Arts. 3443, 3444, Notes 794, 795.)

If equivalent words to "legal offsets, payments, and credits" have been employed, they must be equally comprehensive, certain, expressive, and exhaustive upon the conscience.

The court reviewed the cases collected in Paschal's Dig., Note 483, and held that the result of all the cases was, that if the administrator's objection goes to the person who makes the affidavit, he must state it in his memorandum of rejection; but if the objection be to the words of the affidavit, he need not state that fact, but may raise it for the first time when sued.

If the affidavit be wanting in any of the essential requisites prescribed by the law, the administrator is forbidden to allow the claim; and if he does allow it, his act is expressly declared to be of no effect. (Paschal's Dig., Art. 1309, Note 483.)

The objection was raised by general demurrer, to which, after pleas to the action, was added special cause, (the want of affidavit;) and for this want the judgment was reversed, and the cause dismissed.

APPEAL from Rusk. The case was tried before Hon. REUBEN A. REEVES, one of the district judges.

Every fact necessary to a clear understanding of the case is succinctly set forth in the opinion. Nevertheless the following facts may serve as a guide in practice:

This was a suit instituted in Cherokee district court, on the 7th March, A. D. 1859, by Obadiah Prestidge, the ap-

pellee, against Andrew C. Walters, administrator of Larkin Prestidge, deceased, appellant, on an open account against said estate, one item of which was for $700, alleged services and attention rendered by said Obadiah for the said Larkin, his father, in his last sickness, which account was attempted to be authenticated for probate under the statute, by the following affidavit:

" THE STATE OF TEXAS, }
  " *Cherokee County.* }

" This day personally appeared before me James D. Long, an acting justice of the peace in and for said county, Obadiah Prestidge, who made oath in due form of law that the within account, as charged against the estate of Larkin Prestidge, is correct and just, after allowing all proper credits, to the best of his knowledge and belief.

OBADIAH PRESTIDGE."

"Sworn to and subscribed before me, on the 18th day of February, 1859.    JAMES D. LONG, *J. P.*"

On which account was also indorsed the following rejection of the same:

"I have examined and rejected this account, February 22, 1859.          A. C. WALTERS,

"*Administrator of Larkin Prestidge, deceased.*"

The only pleadings of defendant, Walters, considered material in the attitude of the case, is a general exception filed on the 24th day of March, 1859, and a plea specially impeaching the validity of said affidavit to probate said account, filed on the 14th September, 1860. Judgment rendered on the 30th March, 1861, overruling defendant's exceptions to plaintiff's petition and affidavit and claim, and judgment rendered in favor of plaintiff for the sum of $740 and costs, from which defendant appealed, and assigned the following error committed by the court below: "That the court erred in overruling defendant's (Walters) exceptions to the petitions, original and amended, of plaintiff, filed in said cause, and particularly in holding,

that the claim sued on had been sufficiently authenticated under the statute for probate before presentation to the administrator for acceptance and before institution of suit."

*Brown & Brown*, for appellants.—To this error, particularly assigned, counsel for appellant, Walters, would most respectfully call the attention of the Supreme Court. [They quoted the 49th and 50th sections of the act.] (O. & W. Dig., Arts. 757, 758; 1 Kent Com., 462.)

A set-off takes place only in actions on contracts, and are not allowed in actions arising *ex delicto*. (Bouv. Law Dict., tit. SET-OFF; see also O. & W. Dig., Art. 361.) And, independently of the general distinction, it will be seen by an examination of our statute of discount and set-off and reconvention. (O. & W. Dig., pp. 101 and 102.)

Again, if this claim was not properly authenticated when presented to the administrator, it was his duty, after an examination of the same and the defect observed, to reject it, as the memorandum shows was done in this case. This rejection, if for want of proper authentication, may be general, as in this instance. "If the rejection be general, it will be presumed to be on the merits, and not for the want of proper authentication, unless this be wanting in some of the requisites especially presented by law." (Dunn v. Sublett, 14 Tex., 521.) If from neglect or fraudulent design the holder fails to make the proper authentication, it is at his peril. It is certainly not the duty of the administrator to point him to his error, and advise him to amend his affidavit. All should turn with holy horror from amended swearing.

[The argument of these gentlemen exhausted the Texas cases bearing on the subject, but, as they are reviewed by the court, it has been deemed unnecessary to give the full brief.]

*Donley & Anderson*, for appellee.—This case depends on

the sufficiency of the affidavit made by the appellee to the account before presenting to the administrator for acceptance.

This affidavit is not in the exact words of the statute. The statute requires that the claim shall be accompanied by an affidavit that the claim "is just, and that all legal offsets, payments, and credits, known to the affiant, have been allowed." If a payment had been made, the estate, in justice, should have credit by the amount paid; and on this we submit that a payment would be included in the word "credits" which is used. The word credit is more comprehensive than the word payment or offset, and includes both the latter. In commercial law, credit is understood as opposed to debit. Credit is what is due *to* a merchant; debit what is due *from* him. (1 Bouv. Law Dic.) The word offset we believe is not used by Bouverie. Mr. Webster says of offset: "To set off; to set one account against another; to make the account of one party pay the demand of another." If, then, one account may be made to pay the other, the party holding an account against his creditor is legally entitled to a credit for that amount on the debt he may be owing. If appellee had known at the time of making the affidavit that the appellant held his note, given for a valuable consideration, or any just demand that might be held a legal offset, he could not with propriety and truth say that all proper credits had been allowed. If in this case the appellee was in fact owing to Larkin Prestidge, at the time of his decease, $100 money borrowed, whether he had given note or not, it would constitute a just claim against him in favor of the estate. If disconnected from the transactions upon which this suit is founded, it would in law be a "set-off;" or, to use the statute language, an "offset," to which he would in law be entitled, to have applied as a credit on the account due from him to the appellee. If the debt was owing by the appellee to the intestate, it constitutes a "credit" to which the estate would

be entitled, and we submit would be embraced in the words used in the affidavit. And that, if such debt has been owing by appellee to the intestate, the perjury might be assigned on his affidavit in this case.

Further, if the administrator intended to rely upon the insufficiency of the affidavit as a reason why he would not accept the claim, should he not have stated, as a reason why he rejected it, that it was not properly proved;—that the attention of the appellee being called to the insufficiency of the affidavit, the statement made by the administrator at the time of rejecting the account was calculated to draw the mind of the appellee from the sufficiency of the affidavit?

This court has said: "If the claim is rejected by the administrator because the affidavit is not made by the owner, the cause must be specially stated in the rejection. (Hansell v. Gregg, 7 Tex., 228; Shelton v. Berry's Administrator, 19 Tex., 154; Dunn v. Sublett's Administrator, 14 Tex., 521; McIntosh v. Greenwood's Administrator, 15 Tex., 116.) The affidavit need not pursue the language of the statute if the substance be retained." (Crosby v. McWillie & Moreland, 11 Tex., 94.)

COKE, J.—This is a suit on an account, consisting of various items, amounting in the aggregate to $1,058 50, filed in the district court of Cherokee county, on the 7th of March, A. D. 1859, by the appellee, against the appellant, as administrator of the estate of Larkin Prestidge, deceased. The account was sworn to by appellee before a justice of the peace. The material part of the affidavit was in these words:

"That the within account, as charged against the estate of Larkin Prestidge, is correct and just, after allowing all proper credits, to the best of his knowledge and belief."

The account was indorsed thus:

"I have examined and rejected this account, February 22, 1859.                              A. C. WALTERS,

"*Administrator of Larkin Prestidge, deceased.*

The account, with the accompanying affidavit and indorsement, was filed as an exhibit with the petition, and its presentation and rejection averred. The appellant answered by a general demurrer and various pleas to the merits, and afterwards by amendment excepted specially, on the ground that the account was not authenticated by the affidavit of the appellee, as required by law. The exceptions to the petition and exhibit were overruled by the court below, and the case was submitted to the court upon the proof, without the intervention of a jury, and judgment rendered for the plaintiff below for $740 and costs. The defendant, Walters, prosecutes this appeal. There is neither bill of exceptions nor statement of facts. The only error assigned is the overruling by the court of the exceptions to plaintiff's petition, which ruling appears in the record. We are of opinion that the assignment is well taken, and that the court erred in overruling the exceptions.

Article 1159, Hart. Dig., provides that "no holder of a claim for money against the estate of a deceased person shall bring a suit thereon against the executor or administrator, unless such claim, properly authenticated, has been presented to such executor or administrator, and he has refused to allow such claim, for the whole amount or a part thereof," &c. [Paschal's Dig., Art. 1310, Note 484.]

The obvious effect of this clause of the statute is, to prescribe, as a condition precedent to the right to sue on such a claim, that it shall have been first presented, properly authenticated, to the executor or administrator, and by him rejected, either for the whole amount or in part. This must be averred and proved, in order to maintain an action on such a claim. (Fulton v. Black, 21 Tex., 425.) What shall constitute such proper authentication is clearly defined and prescribed in the preceding section of the statute, (Art. 1158,) in these words: "No executor or administrator shall allow any claim for money against his testator or

intestate, nor shall any chief justice approve of any such allowance, unless such claim is accompanied by an affidavit in writing that the claim is just, and that all legal offsets, payments, and credits, known to affiant, have been allowed." [Paschal's Dig., Art. 1309, Note 483.]   This section is a clear limitation upon the authority of the administrator or executor to allow, and of the chief justice to approve the allowance of, any such claim, except when authenticated by such an affidavit as it prescribes, just as the succeeding section (Art. 1308) is a limitation upon the right of the holder to sue upon his claim, unless it has been first presented, properly authenticated, and rejected. The question then arises, is the claim sued on in this action authenticated in the mode prescribed by the statute? We are of opinion that it is not. Without entering upon a philological discussion, in order to arrive at the meaning of the terms "offsets, payments, and credits," it is very clear, from the terms themselves, considered with reference to the purpose and policy of the law, that they were intended to comprehend every claim for money, of whatever character, existing in favor of the testator or intestate, against the holder of the claim, and every right or equity which, if allowed, would reduce the amount of the claim presented, to the end that the balance remaining, after deducting these allowances, should represent what is due from the estate to the holder of the claim, after an honest and fair statement of all pecuniary matters between the parties.   As words are used to convey and express ideas, so when these ideas are conveyed in the affidavit of authentication, the affidavit would be good under the statute, although couched in different language from that used in the statute.   In Crosby v. McWillie, 11 Tex., 96, where the precise language of the statute was not employed in the construction of the affidavit, it was nevertheless held good, because it conveyed the same meaning.

The affidavit authenticating the claim sued on in this

case is not in the language of the statute, and clearly falls short of conveying the same meaning. It avers the claim to be "correct and just, after allowing all proper credits." The term "credits," in its most comprehensive signification, as contradistinguished from "debit," might possibly be held to embrace all that is necessary; but it has another and more restricted meaning, which would narrow it down to a signification nearly synonymous with "payments," which clearly would not fill the requirements of the statute, as in this sense it certainly does not include "offsets." The policy of the law is manifestly to protect the estates of deceased persons against unjust demands, as well as to save the expense of litigation over those which are just and should be paid. With the intestate or testator is buried most usually all knowledge of his business transactions, except what may be derived from his papers, which generally is meager and unsatisfactory, and not unfrequently is unintelligible, without explanations which no one living can give. Thus poorly advised of the interests and rights and liabilities of the estate, the executor or administrator, however energetic and faithful he may be, is frequently compelled to rely solely upon the affidavit of authentication for his information in regard to the claim presented, and such "offsets, payments, and credits" as should be allowed. A knowledge of these facts was doubtless in the legislative mind when this law was enacted, and it was intended by the affidavit prescribed to search and sift the conscience of the holder of the claim beyond his power of evasion or mental reservation, so that the very truth and justice of the transactions between him and the decedent could be arrived at. Sound policy, no less than the letter and spirit of the law, requires that the courts shall effectuate this intention.

This is a safeguard thrown around the interests of estates of deceased persons, which, while not always sufficient to secure them a full measure of protection, goes very far in

that direction, and should be preserved and enforced, and construed with reference to the evils it was intended to provide against. This can only be done by requiring of the holder of the claim the affidavit prescribed by the statute, and if he elect to frame his affidavit in language different from that used in the statute, by requiring that it shall be equally comprehensive, expressive. and certain, and equally exhaustive upon his conscience. So far from coming up to these requirements the affidavit for authentication in this case uses a part of the language prescribed in the statute, and omits other portions equally important, without pretending to substitute for it other language expressive of the same ideas.

It is insisted by the counsel for the appellee that, if the claim was rejected on account of insufficient authentication, this reason should have been given in the indorsement of the administrator, so that it could have been properly authenticated and again presented, and that, having failed to do this and rejected it generally, he is precluded from relying on that reason now, but must litigate it on its merits. We are referred in support of this position to Hansell v. Gregg, 7 Tex., 228; McIntosh v. Greenwood, 15 Tex., 116; Dunn v. Sublett, 14 Tex., 521; Shelton v. Berry, 19 Tex., 154; and Alford v. Cochrane, 7 Tex., 488. We have carefully examined these cases, and find nothing in any of them to support the position assumed by counsel. The result of these cases is, in substance, that where a claim against an estate is authenticated according to the requirements of the statute, but by the affidavit of a person who does not purport to be the owner thereof, or the agent of the owner, if the administrator would reject the claim on that ground, he must state such cause specially in his rejection, and cannot raise it for the first time when sued for the establishment of the claim. The rulings of the court in these cases we believe to be entirely correct. The statute has not declared by whom the affidavit shall be made: it only pro-

vides that the claim, when presented, shall be "accompa-
nied by an affidavit in writing."    It is left to the judgment
and discretion of the administrator to decide whether the
affidavit is made by the proper person who is cognizant of
the fact.  (Dunn v. Sublett, 14 Tex., 521.)    No such discre-
tion is left with the administrator with reference to the affi-
davit of authentication.   If this be wanting in any of the
essential requisites prescribed by the law, he is forbidden to
allow the claim, and if he does allow it under such circum-
stances, his act is expressly declared to be of no force or
effect.   (Art. 1158.)    The statute, as we have seen, forbids
suit by the holder upon a claim which, on account of in-
sufficient authentication, the administrator is not permitted
to approve.   It would be repugnant to the plainest and
soundest rules of construction to permit this prohibi-
tion to be evaded, and the right to sue conferred on the
holder of the claim by the act of the administrator, or his
omission to designate the cause of his rejection.   Such a
construction would be violative not only of the plain letter
of the law, but subversive of its obvious spirit and policy,
which, among other purposes, aims to defeat the possi-
bility of collusion between the holder of a dishonest claim
and a faithless representative, and cannot be tolerated.

We are of opinion, that the failure of the administrator
to make his objection to the form and manner of authenti-
cation in his memorandum of rejection, did not preclude
him from making the objection alleged in his exceptions,
and that his exceptions should have been sustained.

Because of the erroneous ruling of the court the judg-
ment is reversed, and the cause

DISMISSED.

[DONLEY, J., having been of counsel, did not sit in this
case.]