GEORGE C. ALTGELT, ADMINISTRATOR, v. A. G. MERNITZ ET AL.

Decided December 7, 1904.

**1.—Administrator's Sale—Defective Title.**

An administrator, in selling property of an estate, is not bound to make known defects of title within his knowledge, and where there is neither fraud nor misrepresentation and the sale is regular, the purchaser is bound to pay the amount of his bid though there be a defect in the title.

**2.—Judicial Sale—Title.**

An executor, at a sale under orders of the probate court, conveys only the interest of the testator's estate, whatever it may be, without any warranty or guaranty.

**3.—Administrator—Independent Executor.**

Questioned whether the acts of an independent executor are to be given the same force and effect as the acts of an administrator done under orders of a probate court having jurisdiction.

**4.—Independent Executor—Misrepresentations as to Title.**

Defendant's vendor represented that he was the independent executor of the will of a testatrix in whom the fee simple title to certain community property of herself and husband was vested by will of the husband, and the will of the testatrix not being at hand, defendants, relying upon their vendor's assurances, paid a cash sum and gave notes for the remainder of the purchase price. The testatrix in fact had title to only her half of the community. Held, that defendants taking title to only so much were entitled to an abatement of half the purchase price.

Appeal from the District Court of Bexar. Tried below before Hon. Edward Dwyer.

*Aug. E. Altgelt,* for appellant.—1. The rule governing a purchase at administrator sale is "caveat emptor," and want of title, in the absence of· express fraud, is not sufficient to take such transaction out of the rule. Ward & Turney v. Williams, 45 Texas, 717; Walton v. Reagor, 20 Texas, 103, 109; Mitchell v. Zimmermann, 4 Texas, 76; Club Land and Cattle Co. v. Dallas Co., 64 S. W. Rep., 873, 875; Dallas County v. Club Land Co., 95 Texas, 200, 209; Combs v. Lane, 17 Texas, 280.

2. Equity will not grant relief, though there be a mistake of law or of fact, where the complainant had every opportunity to investigate the title, but failing to do so relies upon the statement of the vendor who gives his mere opinion as to the contents and import of legal documents duly of record. Combs v. Lane, 17 Texas, 280.

*W. W. Boone* and *C. F. Carsner,* for appellees.—Where a sale has been consummated through the false or fraudulent representations of the grantor, the rule of caveat emptor does not apply. Crayton v. Mungor, 9 Texas, 285; Hays v. Bonner, 14 Texas, 630; Mitchell v. Zimmermann, 4 Texas, 76; Coombs v. Lane, 17 Texas, 280; Roehl v. Pleasant, 31 Texas, 45; Able v. Chandler, 12 Texas, 88; York v. Greggs, 9 Texas, 85; Copeland v. Gorman, 19 Texas, 253.

2. The rule of caveat emptor does not apply in case of express or implied warranty; nor does the rule apply with the same strictness to sales made by an independent executor, as it does to sales made by an administrator acting under orders of the court. The former is clothed with certain discretionary powers, which the latter do not have, and the former's authority is not limited to only such acts as could be performed by an administrator acting under orders of the court. Rice v. Burnet, 39 Texas, 177; Doyle v. Hord, 67 Texas, 621; Groesbeck v. Harris, 82 Texas, 411; Stevenson v. Roberts, 25 Texas Civ. App., 577; Dallas County v. Land and Cattle Co., 95 Texas, 200.

NEILL, ASSOCIATE JUSTICE.—George C. Altgelt, as administrator with will annexed of the estate of Amalie Elmendorf, deceased, sued A. G. Mernitz and Albert T. Emison on a promisory note made by them on October 1, 1900, to Henry Elmendorf, independent executor of said estate, for the sum of $3,756, for a part of the purchase money of 876 acres of land in Victoria County bought by them on that day from Henry Elmendorf as independent executor of said estate.

The note is payable five years after date, with interest at the rate of 6 percent per annum, payable annually. It expressly retains a vendor's lien, and provides if default is made in payment of any installment of interest as it becomes due, the note may be declared due by the holder, and if placed in the hands of an atorney for collection, an additional sum of 10 percent upon the amount unpaid shall be collected as attorney's fees.

Default in payment of an annual installment of interest was alleged, and for that reason the note was declared due by the holder.

The answer of the defendants admitted the execution of the note and that it was made for a part of the purchase money for the land sold to them by Henry Elmendorf as independent executor of the estate of Amalie Elmendorf, deceased. But they alleged, as a defense, that in September, 1900, they entered into negotiations for the purchase of the land with W. H. Graham of De Witt County, who was then acting as the agent of and representing Henry Elmendorf; that as a result of the negotiations they agreed to purchase the land at $6 per acre, which was its fair and reasonable value, and to pay therefor $1,500 cash and execute their note for the remaining $3,756, payable five years after date with interest, etc., provided they could get a good title thereto; that after the terms had been agreed upon they employed an attorney to examine the title,. by whom they were informed, after his examination, that the record title was in Charles Elmendorf; that subsequently, on the 1st day of October, 1900, they, by special appointment, met Henry Elmendorf in Cuero, De Witt County, and informed him that the title to the land appeared from the records of that county to be in Charles Elmendorf; that then Henry Elmendorf for the first time informed them that he was selling the land as the independent executor of the estate of Amalie Elmendorf, deceased; that he then represented to defendants that the land had formerly belonged to and constituted a part of the community estate of Charles and Amalie Elmendorf, both of whom were dead; that by the last will of Charles Elmendorf the whole of the land was devised absolutely and in fee simple to Amalie Elmendorf; that she died leaving a will, which had been duly probated, by which she appointed him (Henry Elmendorf) the independent executor of her estate, directing that her debts should be paid out of the property, and giving him, as such independent executor, full power to sell and convey the title to the land.

That Henry Elmendorf did not then have a copy of either the will of Charles or Amalie Elmendorf with him; that defendants then informed him that they could not then close the deal and accept his conveyance as independent executor, pay the $1,500 cash and execute their note for the balance of the purchase money, unless they relied wholly upon his representations as to the provisions of said wills; that Henry Elmendorf then and there informed them that he was quite familiar with the provisions of the wills and that they could rely upon the truth of the statements he had made in regard thereto; that defendants thereupon, believing and fully trusting and relying upon the truth and correctness of said statements, agreed to close the deal for said land, and then and there paid Henry Elmendorf, as independent executor of the estate of Amalie Elmendorf, deceased, the sum of $1,500 cash, as part payment of the purchase money for the whole of the land, and executed and delivered to him, as such independent executor, the note for $3,756, upon which this suit is brought, and accepted from him, as such executor, a conveyance for said land, with covenants of general warranty of title for the whole tract, Henry Elmendorf at the same time agreeing and promising that upon his return to San Antonio, where the wills were recorded, he would send their attorney certified copies of both of them, which he did in about two

weeks thereafter, when, upon examination of the wills, it was discovered that Mr. Elmendorf was mistaken in his interpretation of the will of Charles Elmendorf, and that his statement and representation in regard thereto had been incorrect and untrue, and defendants had been deceived and misled thereby; that instead of the will of Charles Elmendorf having vested an absolute title in Amalie Elmendorf, as Henry had represented to defendants, it, as a matter of fact, only devised in her a life estate in Charles Elmendorf's one-half, or community interest therein; that defendants immediately so notified and informed Henry Elmendorf, and demanded that he take the necessary steps to protect them, and that he thereupon placed the matter in the hands of his attorneys with instructions to take such steps as were necessary to perfect the title to said land in defendants, and to that end a partition suit was instituted, and is now pending in the District Court of the Fifty-seventh District.

That the deed from Henry Elmendorf, as independent executor of the estate of Amalie Elmendorf, deceased, to them is a good conveyance to one-half, or her community interest, in the land, and that they are ready and willing to pay for that portion of the land at the price per acre for which they purchased the same; that one-half, of the community interest of Charles Elmendorf, in the land at the death of Amalie Elmendorf, descended to, and vested in the heirs of Charles Elmendorf, deceased, who are asserting title thereto and denying that defendants have title to any part thereof.

Wherefore they charged that the consideration for the note sued on, to the extent of one-half of the value of the land, had failed.

In the pleadings defendants offered to produce the deed executed by Henry Elmendorf as independent executor of his mother's estate, and agreed that the court cancel the same to the extent of one-half of the land therein described, and to restore and deliver possession thereof to the heirs of Charles Elmendorf, or to plaintiff as administrator of the estate of Amalie Elmendorf, and asked, in such event, that the plaintiff be required to produce the note and indorse thereon a credit equal to the value of one-half of the land therein described, at the price per acre ($6) they agreed to pay for the same, and then that he have judgment only for the difference between the value of one-half of the land at $6 per acre less the cash payment of $1,500, with interest on such difference from the 1st day of October, 1901, at the rate of 6 percent per annum.

The case was tried without a jury and judgment was rendered sustaining defendant's plea of failure of consideration to the extent of one-half the value of the land estimated at the contract price, abating one-half of the original purchase price, canceling the deed of defendants to the extent of an undivided half interest in the land, and in favor of plaintiff for $1,237.35, together with a foreclosure of the vendor's lien on the undivided one-half interest which defendants took in the land by virtue of the deed by said executor of Amalie Elmendorf to them.

From this judgment the plaintiff prosecutes this appeal.

The undisputed evidence establishes as facts the matters plead by defendants, as above set forth.

The contention of appellant is that the facts plead and proven constitute no defense to his action. This is not just, nor does appellant attempt to support it upon principles of justice, but he bases his position upon caveat emptor—a rule as hard and relentless in its grasp as the mailed hand of the Norman Conqueror whose iron heel ground it into the law of the Anglo-Saxon. But in cases to which it is applicable, it is the law. Its existence rests upon public policy—a policy which sometimes, in the interest of the public, heedless of justice, sinks and ruthlessly tramples upon rights of the individual.

To executors' and administrators' sales, when made under judicial authority, the rule of caveat emptor, as it does in all judicial sales, applies in its utmost rigor. The court orders the sale in such cases only of such interest and estate and rights in the premises as the executor or administrator had or could have asserted for the estate in his official capacity; no more, no less. The purchaser succeeds to his rights and attitude in respect to the property sold, stands in his place, acquires his interest as the same existed in his hands, subject to all the infirmities of title then attaching to the estate. The purchaser buys at his peril and takes upon himself the risk of any outstanding rights that could have been successfully asserted against the decedent; and if, by reason of the existence of such rights, whether known or not, he takes nothing by his purchase, he will not be heard to complain. Lindsay v. Cooper, 94 Ala., 170, 11 So. Rep., 326. This is because they are judicial sales and operate in rem. Lynch v. Baxter, 4 Texas, 431; Williams v. McDonald, 13 Texas, 322; Walton v. Reager, 20 Texas, 103. An attack upon such sales, when they are ordered and approved by a court of competent jurisdiction, is in the nature of an attack upon a sale made by virtue of an execution regularly issued upon a valid judgment, at which every bidder at the sale is forewarned that he must beware that if he buys it is at the peril of getting no better title to the property than is in the execution debtor.

It is said by one of the leading authorities that even under this rule a purchaser at a judicial sale may not be compelled to complete the sale, if the title be defective, nor to pay the consideration money until the defect, if there be one, is obviated; for although the rule caveat emptor applies after the sale is closed by payment of the purchase money and delivery of the deed, if there be no fraud or mistake, yet the buyer, if he discovers the defect beforehand, will not be compelled to complete the sale. Rorer on Jud. Sales, sec. 150.

But in administrators' sales the administrator is not in general bound, in selling the property of an estate, to make known defects of title within his knowledge, and where there is neither fraud nor misrepresentations by the administrator in selling, and the sale is regular, the purchaser is bound to pay the amount of his bid, although there be a defect in the title. Woerner, Admin., sec. 484. But all irregularities are cured by the decree of confirmation, which is an adjudication that the sale was made under authority of the court. Potts v. Wright, 82 Pa. St., 498; Smith v. Wildman, 178 Pa. St., 245, 56 Am. St. Rep., 760.

Although the Probate Court has no authority to order a sale of property which does not belong to the estate of decedent, it never assumes to decide whether he was the owner of it or not, and all it pretends to do is to order the sale of whatever interest the decedent may have in the land at the time of his death. Gjerstadegen v. Dagen, 66 Am. St. Rep., 679. If the executor having authority to sell, puts up and exposes for sale a certain tract of land, the purchaser is, in the absence of fraud or misrepresentation, bound to pay his bid, although the testator had no title; for at such a sale he sells the interest of his testator's estate, whatever it may be, without any warranty or guaranty. Keen v. McAfee, 116 Ga., 728, 42 S. E. Rep., 1022; Colbert v. Moore, 64 Ga., 502; Jones v. Warnock, 67 Ga., 484.

But does the rule of caveat emptor, if it applies at all, apply to sales made by an independent executor in all its strictness?

As has been observed by the Supreme Court of this state, "an independent executor is something unique in his character." While he takes charge of and administers the estate of his testator without action of the County Court in relation to the settlement of the estate, and may do, without an order, every act which an executor administering an estate under the control of the court may do, with such order, he is uncontrolled, uninformed, unchecked, and untrameled by orders of the court directing, informing or commanding what he shall do in the management and administration of the estate. He is an executor at large, exercising his own judgment and discretion, acting and doing what he pleases, unless brought to account for his actions by some one interested in the estate or affected by the way it is being administrated; he is an independent executor. But are his acts entitled to the same weight and sanctity, and to be given the same force and effect as are given the acts of an administrator done under authority and in obedience to orders of a court having jurisdiction of the estate and control of its administrator? Can he, when he does that which no court could authorize or empower him to do, if the estate were being regularly administered, throw out as a shield the rule of caveat emptor to protect the estate from the consequences of his unauthorized and wrongful acts, and enable the estate to reap where his testator has never sown, and enrich itself by gathering to it the fruits of wrong at the expense of others? If so, then he is as independent as Satan when going to and fro in the earth and walking up and down it.

Let it, however, be conceded, pro hac vice, that a sale of an independent executor stands upon the same plane with one made in the regular administration of an estate through the Probate Court, still in equity the purchaser will be protected against the consequences of having been misled by the fraud or mistake of the executor or administrator, so far as he had a right to rely on his representations. Woerner, Admin., sec. 485; Black v. Walton, 33 Ark., 321; Folson v. Howell, 94 Ga., 112; 21 S. E. Rep., 136; Kingsbury v. Love, 95 Ga., 543, 22 S. E. Rep., 617; Clay v. Kagel Macher, 98 Ga., 149, 26 S. E. Rep., 493; Atwood v. Wright, 29 Ala., 346.

In the case of Kingsbury v. Love, supra, an administrator was empowered to sell a bond for title, wherein the obligor covenanted to

reconvey to the intestate on payment of a certain sum, and to sell the interest of the intestate in the premises described in the bond, and at the sale the auctioner, acting for the administrator, announced that the land itself would be sold, and in reply to a person who announced that he would bid only for the land free from incumbrances the administrator stated that he would pay off the debt out of the proceeds of the sale, whereupon such person bid for the property. On the administrator's refusing to comply with the terms of the announcement, it was held that the bidder could not be compelled to complete the purchase, or pay the difference between his bid and the price for which the bond and the intestate's interest was subsequently sold at his risk.

In Black v. Walton, supra, it was held that, although a sale made by a guardian of his ward's estate under an order of the Probate Court is a judicial sale and the rule caveat emptor applies, where the purchaser bought upon the representations of the guardian that the purchaser would acquire a good title, which turned out to be untrue, the purchaser could not be held at law or equity, though the guardian may not have known of the falsity of his representations.

While we know of no authoritative decision of the Supreme Court of this State directly upon the question under consideration, yet the trend of decision of the Texas courts tends strongly to establish the principle supported upon the authorities last cited. See Ward v. Williams, 45 Texas, 617; Mitchell v. Zimmermann, 4 Texas, 76; Crayton v. Munger, 9 Texas, 287; Hays v. Bonner, 14 Texas, 630; York v. Gregg, 9 Texas, 85; Coombs v. Lane, 17 Texas, 280; Able v. Chandler, 12 Texas, 88.

Where, as in this case, the vendor knows or may reasonably be supposed to know material facts concerning the title, which are unknown to the vendee, and which can not otherwise be ascertained by him at the time and place of sale, and informs the vendor that he must rely solely upon the truth of his statements and representations in regard to the title, and the vendor makes such statements relative thereto, which, if true, would constitute a good title, and the vendee, relying upon the truth of such statements, buys, and the statements afterwards prove to be untrue and the title bad, the vendee can, to the extent of the failure of title, surrender the property and defend against an action brought for the purchase money, and it is immaterial whether the vendor knew such representations to be false, or made them without knowing whether they were true or not. And this, too, where the vendor is an independent executor.

The judgment is affirmed.

*Affirmed.*