## J. H. BERRY ET AL. v. C. J. HINDMAN ET AL.

### Decided April 28, May 26, 1910.

#### 1.—Continuance.

An appellant can not complain of the refusal of a continuance on application made by his codefendant in which he did not join.

#### 2.—Same—Absence of Party.

An application for continuance because the party was prevented from being present by sickness was addressed to the discretion of the court and reviewable only on a showing of its abuse. The case is held not to show such abuse or discretion, an issue of fact being made as to the party's inability to attend.

#### 3.—Continuance—Surprise—Harmless Error.

Error in refusing continuance claimed on the ground of surprise by new pleading was not ground for reversal where the new pleading set up no new facts, but merely sought a personal judgment not before asked, and the judgment was, on other grounds, so reformed as not to allow such personal judgment.

#### 4.—Executor's Sale—Order of Court.

A sale of land belonging to an estate made by an executor without order of the County Court or power given by the will to sell without order passed no title.

#### 5.—Independent Executor—Will.

A will, in order to exempt the executor from the authority of the court, should, if the language of the statute (Rev. Stats., art. 1995) is not followed, clearly show a desire on the part of the testator to exclude the active supervision and control of the County Court.

#### 6.—Same.

The words, "I will that my husband, J. H. B., shall be the executor of my estate without bond, and that he shall have power to do all things necessary in settling up the same, as provided in this my last will and testament," did not create the husband an independent executor nor authorize him to sell lands of the testators estate without order of the court authorizing him to do so.

#### 7.—Same.

Neither exempting the executor from giving bond, nor conferring upon him special authority to sell for any specific purpose, nor providing that the just debts of the testator be paid, would make him an independent executor. The probate court would still have jurisdiction over the allowance of claims, the settlement of the executor with heirs or devisees, and the final distribution of the estate.

#### 8.—Estates—Executor—Heirs—Jurisdiction.

The District Court had jurisdiction of an action by heirs to cancel deeds, remove cloud from their title, and determine the rights of persons holding under conveyance of the lands of their ancestor, made by his executor without order of the County Court and under an unfounded claim of right to administer as independent executor. The District Court alone could afford this relief, and the fact that the title had been clouded by the act of the executor and that administration was still pending in the probate court presented no obstacle to the exercise of its jurisdiction.

#### 9.—Same—Personal Judgment.

The District Court had no jurisdiction, while administration was pending in the County Court, to render a personal judgment against the executor, at

suit of the heirs, for his unauthorized sale of lands, the separate property of the testator, his deceased wife, mortgaged to secure a community debt, and his appropriation of the proceeds to discharge of such mortgage for which the executor was himself primarily liable. Nor was such relief so incident to an action of the heirs to set aside the conveyance and remove the cloud it cast up on their title as to support such jurisdiction. The probate court had sole power to determine the executor's liability, and the judgment of the District Court was without effect, though directed to be enforced, not by executive, but by certifying it to the probate court to be there enforced subject to proper offset from his accounts as executor.

**10.—Executor—Debt to Estate—Jurisdiction.**

The debt of an executor to the estate, whether incurred before administration or arising during it, is a matter for determination in the probate court, and not to be adjudicated in a suit by the heirs against him in another tribunal.

**11.—Estates—Mortgage—Credit on Claim—Equities—Jurisdiction.**

A holder of a mortgage on land belonging to an estate took a deed thereto from the executor in consideration of the extinguishment of his debt, and sold the growing timber on the land to other parties. The heirs, by suit in the District Court, set aside the deed to the mortgagee, but they and the purchasers of the timber consented that his sale thereof be affirmed, as being for a fair price, and the judgment charged the mortgagee with the price received for the timber, as a credit on the mortgage debt. Held:

(1) That the heirs, by their consent, could not, as against the mortgagee, validate the sale of the timber while setting aside the executor's deed, and compel a credit of the price realized by the mortgagee upon his incumbrance, in the absence of a showing of equities necessitating that relief for their protection, such as insolvency preventing the mortgagee from answering personally and proof that the timber had been removed from the land and would not return to the estate on the executor's conveyance being set aside.

(2) That if the proper equities to support such a decree were shown, the relief awarded was beyond the jurisdiction of the District Court in such action, the allowance and settlement of the mortgagee's claim and proper credits being a matter solely within the jurisdiction of the probate court. The same was also true of an allowance of a commission to the mortgagee for making the sale of the timber.

ON MOTION FOR REHEARING.

**12.—Jurisdiction—Matters Incidental to Controversy.**

The District Court having jurisdiction over the main question involved, may determine in the same action all incidental questions and rights necessary to its disposition, but only those so necessary, if they are questions which by themselves are exclusively within the jurisdiction of another court, such as matters involving settlement of estates of decedents on which administration is pending.

**13.—Same.**

The unauthorized conveyance of incumbered land by an executor to the mortgagee having been cancelled at suit of the heirs in the District Court, neither the heirs nor purchasers of the timber on the land from the mortgagee could complain of the refusal of the court to affirm such sale of the timber and credit the price paid on the mortgage. Such decree was not necessary as an incident to the setting aside of the executor's deed. It was proper to leave their rights resulting from the judgment to be settled by the probate court.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*Young & Abney,* for appellant Berry.—The new cause of action set

up in the supplemental petition entitled defendant to a continuance. Rule 16 for District and County Courts; Witliff v. Spreen, 112 S. W., 98.

Where the wife dies leaving a surviving husband no community estate, the surviving husband is not liable to the heirs of the deceased wife for the community debts which were paid out of the wife's separate estate after her death by the surviving husband, where such debts had been secured by a mortgage, given by the husband and wife on her separate estate. Rev. Stats., arts. 2973, 1697, 2219, 2230; Moody v. Smoot, 78 Texas, 119; Taylor v. Murphy, 50 Texas, 291; Evans v. Breneman, 46 S. W., 80; Richardson v. Hutchins, 68 Texas, 81.

Where the husband qualifies as executor of his deceased wife's estate, and as such executor takes possession of her separate property and is administering the same as executor of her will, the County Court in which administration is pending, has exclusive jurisdiction of the account and the executor with reference to the said separate estate, and with reference to his liability to the heirs of the deceased wife for community debts paid out of her separate estate, by him as such executor. —Same authorities.

*W. T. Armistead* and *F. H. Prendergast,* for appellant Duke.

*Jones & Bibb,* for appellees.—The estate of Mrs. Frances Berry was not withdrawn from the Probate Court by the will and it was necessary to administer the estate under the orders of the Probate Court, and all contracts, deeds, and dealings with reference to the said estate by the administrator or executor, not had in accordance with the orders of the Probate Court were void, and only constituted a cloud upon the title of the appellees to the property. Rev. Stats., arts. 2009, 1995, 2113; Gray v. Russell, 91 S. W., 235; Baker v. Hamblin, 85 S. W., 468; Lewis v. Nichols, 38 Texas, 54; Smithwick v. Kelly, 15 S. W., 486.

The court did not err in rendering judgment in favor of the appellees, the thilren of Mrs. Frances Berry, for $10,555.50 being the amount of the J. M. Bemis mortgage and judgment, because this was a comunity debt of J. H. Berry, and he was primarily liable therefor and the property of the children of Mrs. Frances Berry, having been used to pay the debt, the children are entitled to judgment against J. H. Berry for that amount. Tison v. Gass, 102 S. W., 751, and cases there cited; Richardson v. Hutchins, 68 Texas, 89; 3 S. W., 276.

HODGES, ASSOCIATE JUSTICE.—The appellees, Mrs. C. J. Hindman, Mary Berry, Spire Berry and Louise Berry are the children, heirs and devisees of Mrs. Frances Berry, deceased, and J. H. Berry. They bring this suit against J. H. Berry, their father, to cancel a deed from him to C. T. Duke and to remove cloud from their title to certain lands described in the petition, which they claim under a will from their mother. R. B. and A. D. Eglin, J. K. Foster, L. E. Tignor and J. H. Jarrett were joined as parties plaintiff because of a claim to an interest in the timber on the land, which will hereafter be referred to. C. T. Duke, W. H. Bolding and J. H. Bemis were also made parties de-

fendant with Berry, for reasons which will be disclosed in the statement of the case.

J. H. Berry and Frances Berry were married some time prior to 1880. After her marriage with Berry the latter incurred a community indebtedness of $7,085 to J. M. Bemis. In June, 1901, Mrs. Berry joined by her husband, executed a deed of trust on her land for the purpose of securing that debt. In 1902 she died at Fort Gibson, Indian Territory, leaving this debt unpaid. She left a will, the material portions of which are as follows: "I will that all my just debts be paid out of my estate in the State of Texas. I will, bequeath, give and devise all the rest, residue and remainder of my estate, real and personal, after my debts are paid, except as hereinafter provided, to my four children (naming them). I will, give and bequeath unto my husband, J. H. Berry, the sum of five dollars. I will that my husband, J. H. Berry, shall be the executor of my estate without bond, and that he shall have power to do all things necessary in settling up the same as provided in this my last will and testament." This will was probated in Marion County, Texas, and Berry qualified as executor by taking the required oath. In 1905 Bemis brought suit in the District Court of Marion County against Berry individually, and as the independent executor of his wife's will, and obtained a judgment for the amount of his debt and a decree foreclosing his lien on the land covered by the deed of trust. The judgment was never certified to the County Court where the administration was pending. In May, 1907, the land was offered for sale under this decree, but no sale appears to have been made, Bemis agreeing to grant Berry further indulgence. In the fall of that year Bemis again insisted upon the payment of his debt, which then amounted to over $10,000. Berry, being without means to pay the same, made an arrangement with appellant C. T. Duke for the money, which arrangement is best explained by the following written agreement entered into by them:

"Contract and agreement made this the 24th day of December, A. D. 1907, at Jefferson, Texas, in Marion County, by and between J. H. Berry individually, and as the independent executor of the estate of his wife, Mrs. Frances B. Berry, deceased, and C. T. Duke.

"1st. A perfect title and deed of conveyance shall be executed by said estate and Mrs. Berry's heirs, if necessary, to the land and timber known as the Haggerty Place in Harrison County, Texas, consisting of about 4480 acres of land, same being 400 acres of the Wiley Ingram survey, and 3938 acres of the W. H. Payne survey; both of said surveys being situated in Harrison County, Texas.

"2nd. The consideration therefor shall be ten thousand, five and twenty-eight dollars, and the same to be applied to the payment of the trust deed and judgment debt in favor of J. M. Bemis, of Warren, Pennsylvania, and said money is to be applied and both parties are to see that it is so applied, and the money and deed to be placed in escrow until this is done at the Commercial Bank of Jefferson, Texas, it being necessary to so sell said land and timber to pay this debt which was a liability of the deceased, Mrs. Frances Bernard Berry, at the time of her death.

"3rd: Mr. C. T. Duke is to then deed the lands to J. H. Berry

for the difference between the ten thousand five hundred and twenty-eight dollars and five thousand dollars, and five hundred dollars commissions reserving the timber ten inches at the stump and over, within eight years from the date of this instrument, except the old field pine and oak timber inside of the 1200 acre enclosure.   This amount of money is to be made in two vendor's lien notes of equal amounts each, payable in one or two years after date, with ten percent interest from date, and ten percent attorney's fees if sued upon or placed in an attorney's hands for collection, and the default in the payment of either note and the accrued interest shall mature both notes at the option of C. T. Duke or the holder thereof, and said notes shall be drawn payable at Jefferson, Marion County, Texas."

In pursuance of this agreement, on the 9th day of December, 1907, Berry, purporting to act as the independent executor of the will of his deceased wife and individually, conveyed the land described in the plaintiffs' petition to Duke.   On the same date, Duke made a conveyance of the land back to Berry, reserving the timber above ten inches in diameter and accepting as the consideration for this transfer, Berry's two notes for the aggregate amount of $6,078, secured by a vendor's lien on the land.   Duke also, on the same date took a transfer to himself of the Bemis judgment.   Nine thousand dollars of the money used by Duke in taking up this judgment was borrowed by him from a Miss Betty R. Bolding.   After the land was conveyed by Duke to Berry, the vendor's lien notes given by the latter were transferred by Duke to Miss Bolding as security for the money advanced by her.   She also obtained from Duke a conveyance of a half interest in the timber reserved upon the land conveyed to Berry.   Subsequently, and before this suit, Duke sold the timber to R. B. and A. D. Eglin, who later sold a portion of it to the other parties joined as plaintiffs in this suit.   The consideration received by Duke for that sale was $10,000, half in cash and the balance in one note.

At the time of Mrs. Berry's death her children were all minors, ranging in age from 13 to 20 years; those of them who testified upon the trial disclaimed any knowledge of these dealings between Berry and Duke with reference to their land, till in the spring of 1909.   This suit was instituted April 12, 1909.   The plaintiffs, in their original petition, charge in substance that Berry and Duke entered into a conspiracy to fraudulently deprive the children of Mrs. Berry of the land involved in suit, and to enable Berry to acquire title to the land in his own right; that Berry was not the independent executor of the will of Mrs. Berry, and had no authority to make any conveyance of the land to Duke.   It is also claimed that the sale to Duke was for a grossly inadequate sum.   It is further alleged that Duke, as the vendee of Berry, had sold the timber to R. B. and A. D. Eglin, and that they in turn had sold a portion or it to Foster, Tignor and Jarrett; that the plaintiffs have agreed among themselves that inasmuch as Eglin, Tignor and Jarrett had paid their money for the timber, and paid a reasonable price therefor, the children, plaintiffs, would acquiesce in the sale of the timber and require C. T. Duke to credit the price he received therefor, upon the original Bemis mortgage.   There was no effort to defeat the Bemis debt. and in all the pleadings it was recognized as

a valid claim against the property involved. Berry answered, claiming to be a one-half owner of the land, saying that his wife held the land in trust for him. Duke answered, claiming that the will of Mrs. Berry constituted her husband her independent executor and authorized him to sell the property; that he (Duke) purchased the property from Berry as such independent executor of the will of his deceased wife; and claimed that all of the transfers were valid and regular, and not in fraud of the rights of the children. By a supplemental petition, the children of Mrs. Berry set up that the Bemis debt was a community debt of Berry and his deceased wife, and that Berry was primarily liable therefor, and should have paid the same out of his own property, and that, inasmuch as their property had been used in paying the debt to the extent of the value of the timber sold by Duke, they were entitled to recover a personal judgment against Berry for the amount of the debt, and asked for judgment to that effect. In what he styles a "Trial Amendment," Berry interposes the objection to any recovery by the plaintiffs, because of the pendency of an administration upon the estate of Mrs. Berry in the County Court of Marion County. He alleges that the estate is indebted to various parties as well as to him. . The suit as to Miss Betty Bolding was dismissed by the plaintiffs in the trial.

The cause was tried before a jury and submitted upon special issues. In the answers returned, the jury found substantially the following facts: That the actions of Berry and Duke in their transfers of the land and the timber between themselves, amounted to an attempt to defraud the children of Mrs. Berry and deprive them of the time of Berry's deed to Duke was $36,000; that the reasonable market value of the timber at the same time, and at the time Duke sold to Eglin Brothers, was $14,000.00; that the reasonable market value of the land without the timber, on the date of Berry's conveyance to Duke was $22,000. The jury also found that Duke was the owner of the Bemis judgment at the time he sold the timber to Eglin Brothers; that when he made the trade with Berry, in December, 1907, Duke did not intend to commit a fraud upon the rights of the children of Mrs. Berry. The court propounded this further interrogatory: "What was the amount of reasonable expenses for Duke to convert the timber into money by sale?" To which the jury answered: "Five hundred dollars." Upon these findings, the court entered a judgment substantially as follows:

1st. In favor of the children of Mrs. Berry for title to the land sued for, and cancelling the deeds from Berry to Duke and from Duke to Berry "in so far as the title to the land is concerned."

2nd. Quieting the title and possession of R. B. and A. D. Eglin, J. K. Foster, L. E. Tignor and J. H. Jarrett to the timber.

3rd. Directing that the $10,000 paid by Eglin Brothers to Duke for the timber be declared a credit on the Bemis mortgage, and charging the land with payment of $1906.01 found as the remainder of the debt still due.

4th. A personal judgment against Berry in favor of his children for $10,555.50, the amount of the Bemis debt, which is found to be a

community obligation for which Berry was primarily liable. In that connection it is directed that no execution issue and that this judgment be subject to any legal offsets that may be found by any court of final jurisdiction in the settlement of his accounts as executor.

5th. Duke was allowed $500 as commissions for his services in selling the timber to Eglin Brothers, this sum being deducted from the $10,000 received by him, and a lien adjudged in his favor against the land for $1906.01 balance of Bemis' debt still due him. It was ordered that this be certified to the County Court of Marion County, for observance.

6th. The Bemis mortgage was canceled except as merged in the judgment there rendered.

7th. Appellants were enjoined from interfering with the title of the plaintiffs to the land and timber, and from making any conveyances affecting that title.

8th. It was directed that as an administration of the estate of Mrs. Berry was still pending in the Probate Court of Marion County, no writ of possession should issue in favor of the children for the land, till after final settlement by Berry.

Berry and Duke file separate assignments of error, but both complain of the refusal of the court to grant a continuance, because of Berry's absence at the time of the trial. The record does not show that Duke made any application for a continuance, and for that reason, his assignment is without merit. It appears from the record, that the case was called for trial on Thursday, October 21, 1909, and that Berry's attorneys then asked for a continuance because of the absence of their client, who, it was claimed, was unable to attend the trial on account of sickness. The case was passed at their instance till Monday the 25th, at which time it was again called and the application for a continuance presented and overruled. A contest to the application had been filed by some of the parties plaintiff, denying that Berry was in fact sick or unable to attend the trial, and charging that he was feigning sickness in order to secure a continuance. Upon the filing of this contest, the court appointed a physician to make a personal examination of Berry and ascertain whether or not he was in fact unable to attend court. After considering the subsequent affidavits filed and also the fact that the judge of the court had himself seen Berry on the streets of the City of Marshall, the place where the trial was being held, on Saturday preceding Monday, the day upon which the motion was acted on, and that Berry appeared to him to be in perfect health, the court overruled the motion. To this action, Berry alone reserved a bill of exceptions. This motion was not a statutory application, and its disposition rested largely in the discretion of the court. The exercise of that discretion will not be revised on appeal unless an abuse is shown and that an injustice has been done to the complaining party. Guy v. Metcalf, 83 Texas, 37, 18 S. W., 419. We think the facts upon which the court acted in disposing of the motion justified the conclusion that Berry was not unable to be present at the trial. The record shows that Berry's deposition had previously been taken, was available but was not used. The principal ground set out in the motion for a continuance was that of surprise and the conse-

quent necessity for Berry's personal attendance and testimony to meet the new cause of action which it is claimed was set up for the first time in plaintiffs' second supplemental petition. The record shows that on the 25th of October, the day on which the trial began, appellees filed what is termed their "Second Supplemental Petition," in reply to the first amended original answer of Berry which had been filed on October 19th preceding. It seems that while this pleading is styled a "Second Supplemental Petition," it is in fact the first reply to the amended answer presented by Berry. What is termed the "First Supplemental Petition" was a reply to the answer filed by Duke. In pleading which it is claimed operated as a surprise to Berry, the children of Mrs. Berry, among other things, asked for a personal judgment over against Berry for the amount of the Bemis debt and judgment, for the payment of which their property had been subjected. As a basis for that relief, they alleged specifically that the debt was a community obligation for which Berry was personally responsible, and that the property subjected in their hands was the separate property of their mother, and would not be liable for the payment of this debt but for the fact that it had been mortgaged by her during her life time. The averments relative to the property's being the separate estate of Mrs. Berry were substantially embraced in the original petition. The right to the relief there sought rested exclusively upon the fact that it was her separate property, and that it had been devised to the children as such, by their mother. That the Bemis debt is a community obligation, is not disputed. There was, therefore, nothing to create any legal surprise, unless it be the prayer for a personal recovery against Berry. In view of the modification which we make of the judgment of the court below, that objection is rendered groundless. We think there was no error in refusing the continuance.

There are two grounds upon which the plaintiffs in the suit attack the transactions between Berry and Duke. (1) That Berry was not an independent executor of the will of his wife, had no right or power to convey any of the property without an order from the Probate Court, and that his conveyance to Duke was a nullity. (2) That if Berry had such power, the transactions between him and Duke were in furtherance of a conspiracy to defraud the children of Mrs. Berry, and deprive them of their property for a grossly inadequate consideration. If the contention that Berry was not, by the will, created an independent executor, or was not otherwise empowered by that instrument to sell the property conveyed to Duke without an order of the County Court, be correct, then it necessarily follows that no rights were acquired by any of the parties, through the conveyances that passed between Berry and Duke. Art. 2113, Rev. Civ. Stat.; Matula v. Freytag, 101 Texas, 357, 107 S. W., 536; Altgelt v. Mernitz, 37 Texas Civ. App., 397, 83 S. W., 891. As we understand the record and briefs of counsel, it is conceded that the Bemis debt was never presented for allowance as a claim against the estate of Mrs. Berry, in the method pointed out by the statute, and that no order was ever made by the County Court of Marion County directing the sale of this property for any purpose. In the suit by Bemis, wherein he recovered a judgment against Berry for the amount of his debt and a decree fore-

closing his lien upon this property, Berry is referred to as an independent executor of his wife's will. In the conveyance from Berry to Duke, which is relied upon as the basis of all the rights claimed by Duke and his vendees, and by Berry individually, the latter purported to act as an independent executor. It at once becomes apparent that the determination of the issue involving the power of Berry to act as an independent executor of his deceased wife's will, and the right of the creditors to so treat him in the collection of their claims against the estate, is one of first importance in the consideration of the various assignments of error presented in this appeal. That question we will now proceed to consider.

Under our system the County Court has general probate jurisdiction. When an instrument purporting to be a will is presented for proof of its execution, that court not only has the judicial power to determine that particular issue, and to grant letters testamentary to the individual named as the executor, but may exercise general supervision and direction over the administration that is to follow, including the settlement, partition and the distribution of the estate. Const. of Texas, art. 5, sec. 16; Rev. Civ. Stat., arts. 1840 and 1991. However, art. 1995 provides: "Any person capable of making a will may so provide in his will, that no other action shall be had in the County Court in relation to the settlement of his estate, than the probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate." The effect of this latter article is to enable the testator, if he so desires, by the use of appropriate language to exclude the active exercise of a portion of the court's general authority, and to limit its powers to the duties named in the statute, in those cases where the person nominated as executor accepts and executes the trust. It appears to us that such testamentary directions, when made, should be regarded more as merely suspending and excluding the exercise of the court's authority than as a devestiture of its jurisdiction. Roy v. Whitaker, 92 Texas, 346, 48 S. W., 892. It would therefore seem to be essential, whether the language of the statute is followed or not, that the provisions relied upon for construing an instrument as an independent will should be couched in terms clearly showing a desire on the part of the testator, to exclude the active supervision and control of the County Court. The following provision in Mrs. Berry's will is the only one which can, in any sense, be construed as expressive of that intention: "I will that my husband, J. H. Berry, shall be the executor of my estate without bond, and that he shall have power to do all things necessary in settling up the same, as provided in this, my last will and testament." The force of the inference favoring the independent character of the instrument which may be drawn from this clause of the will, lies chiefly in the extent of the power over the management and control of the estate which it confers upon Berry. Relieving him from the necessity of giving a bond did not make him an independent executor. Gray v. Russell, 41 Texas Civ. App., 526, 91 S. W., 235; Lewis v. Nichols, 38 Texas, 54. Neither would conferring special authority to settle all or any portion of the estate, for any specific purpose, have that effect. The Probate Court would still have the power to pass upon and allow claims, direct their

payment, approve the final settlement of the executor with the heirs or devisees, and make distribution of what remained of the estate. The grant of the power to "do all things necessary in settling up" an estate, is not inconsistent with an intention to have that power exercised under the supervision and direction of the proper court, nor is it repugnant to the idea that the testator may have still desired that claims against the estate should be adjudicated by, and their payment enforced through the County Court, that that court should pass upon, and approve the final settlement of the executor, and make distribution of the property among the devisees. If the testatrix desired an independent administration of her estate, it was not necessary that she should confer extraordinary powers upon her executor; the simple nomination of the individual, as such, would be sufficient, if coupled with an express desire that the Probate Court take no action further than that required by law. Hence, in searching for the intent of the testatrix, we are more concerned about her language touching the jurisdiction of the court, than we are about those provisions of the will conferring power upon the executor. The legal displacement of the Probate Court's authority, to the extent essential to constitute an independent will under our statute, would hardly be accomplished by an enlargement of the power of the executor, except in those instances, where a special trust is created.

There is another provision of the will which says: "I will that all my just debts be paid out of my estate, in the State of Texas." There are several reasons why we do not think this clause is sufficient to authorize the executor to sell the land here involved, without an order from the County Court. The particular debt for the payment of which this sale is sought to be justified, was a community obligation, for which Berry alone, was personally liable. It was not due till about three years after Mrs. Berry's death. It was not her debt, and she had a right to assume that her husband would pay it at maturity, without invading her estate for that purpose. It is true, this portion of her separate estate was bound for its payment, but only as security by virtue of the mortgage previously given by her. Schneider v. Sellers, 98 Texas, 380, 84 S. W., 417. If she had this particular debt in mind as one which she desired paid out of her Texas property, a direction to that effect was wholly unnecessary, for the reason, that a portion of this property was already bound for its payment, and would be so applied, provided Berry himself, did not meet his obligation. Again, the inventory returned by Berry shows that his wife owned, at that time, in Texas, seven different tracts of land, aggregating 7312 acres, some of which were situated in Harrison County and some in Marion County. The testimony shows that the 4418 acres in Harrison County, covered by the mortgage, was worth, during the prevalence of a financial panic, $36,000. The Bemis debt at that time, was approximately $10,000. When the will was made, it must have been much less. Under these circumstances, the failure of the testatrix to indicate how much or what portion of the Texas property should be sold for the payment of the debts of her estate, leaves an exceedingly weak inference of any intent to confer upon Berry the authority to sell any portion of the Texas land without direction

from the proper court. In fact, we do not think it can be reasonably inferred that she had this particular debt in mind at the time. Placing upon the language of the entire instrument that construction which is most favorable to the contention of the appellants, it cannot be said that the intention of the testatrix as to whether she desired her estate administered independent of the Probate Court, or that her Texas land should be sold and this debt paid from the proceeds thereof without an order of that court, is free from grave and serious doubts. In such cases, we believe the interest of those concerned is best conserved by resolving the doubt in favor of the jurisdiction of the Probate Court. By so doing, the interest of the beneficiaries and creditors will receive the protection of those safeguards which the law has provided, while the only injury to which the parties might be subjected, would be that resulting from some delay and the additional expense arising from court costs. We therefore conclude, that the will did not provide for an independent administration of the estate of Mrs. Berry, and did not authorize J. H. Berry to make the sale of the land involved in this suit without an order from the County Court.

If we are correct in this holding, then the deeds from Berry to Duke and from Duke to Berry, were absolutely void for want of authority in Berry to make a conveyance of the title to the land in the first instance. This view renders it unnecessary for us to consider the charges of fraud preferred against Berry and Duke in the plaintiffs' original petition, and which were submitted to the jury upon the special issues before referred to. While we think the evidences of fraud fully warrant the findings of the jury upon these issues, and a judgment annulling the deeds from Berry to Duke and from Duke to Berry, we have decided to rest our disposition of the case and future discussion upon the lack of authority in Berry to act as an independent executor of the will, or to sell the property without an order to that effect from the County Court of Marion County. It is suggested that if Berry was not by the will constituted an independent executor, then, upon proof that an administration upon the estate of Mrs. Berry was still pending in the County Court of Marion County, it should be held that the District Court was without jurisdiction of this suit. The cause of action as presented in the plaintiffs' original petition embraced applications for several different kinds of relief, among which are the following: the cancellation of the deeds from Berry to Duke and from Duke to Berry, the removal of the cloud from title to the land described, and quieting the title of the Eglins and their vendees to the timber. While the petition presents rather an anomalous association of parties plaintiff, and applications for relief which might more appropriately have been sought in separate actions, these conditions alone do not affect the jurisdiction of the court over the subject-matter of the litigation. There are, however, other issues raised, and different relief asked for, which do involve the question of jurisdiction, and which will be discussed later on. In so far as the object of the suit was to protect the title to the land, and not in any way interefere with the administrative rights of the executor to lawfully use and appropriate the property to the payment of debts against the estate of Mrs. Berry, the action was maintainable, and the District Court was the proper forum. The

fact that the executor had himself, by an unlawful usurpation of authority, · or by a fraudulent conspiracy with another, beclouded the title to the land, did not deprive the devisees, during the pendency of the administration, of the right to invoke the power of an appropriate tribunal to protect their title. Buchanan v. Bilger, 64 Texas, 590. This relief could not have been secured in the Probate Court; and to deny them the right to resort to the District Court under such circumstances, would be to deprive them of a remedy for a palpable wrong,

Berry complains of the personal judgment rendered against him in favor of his children, for $10,555.50. This judgment was sought and obtained upon averments, and prayer for relief, contained in appellees' supplemental petition. But the judgment is not assailed on account of any irregularity in the form of the pleading, and we are not called upon to consider that question. It is contended that the judgment is inconsistent, "that the court having found that the administration upon the estate of Mrs. Berry had not been closed, it had no jurisdiction to render any judgment in this cause as to the liability of the executor of the estate of Mrs. Frances Berry, deceased, to the devisees of said deceased." The evidence is undisputed that the will of Mrs. Berry was probated in the County Court of Marion County, and it is not contended that the administration has ever been closed; on the contrary, it may be assumed, as an uncontroverted fact, that it is still pending. The pendency of the administration and lack of jurisdiction in the trial court, were suggested by the appellant, Berry, in what he terms a "Trial Amendment." This pleading was filed after the filing of the supplemental petition before referred to. It seems, however, that the court took no notice of this plea, but rendered a judgment against Berry, in which the pendency of that administration was recognized and recited, and undertook to protect Berry against any loss or embarrassment likely to result from that situation, by providing that the judgment should be subject to such offsets and credits as might accrue in the course of the administration. The effort to recover this personal judgment against Berry is not so incidental to the action for cancellation of the deeds and removal of cloud from title, as to be, for that reason, cognizable in the District Court, where, if standing alone as an independent suit, it would not be within its jurisdiction. This part of the suit not only forms no part of the cause of action asserted in the original petition, but the relief sought has no connection with that which is there sought. The jurisdiction of the court may therefore, be determined by regarding this portion of the controversy as if it stood alone.

If the liability sought to be established against Berry grows out of the management and disposition of the property belonging to the estate of his deceased wife, in which the children are now interested, the suit could not be maintained by them against him during the pendency of that administration. Buchanan v. Bilger, supra; Stewart v. Morrison, 81 Texas, 398, 17 S. W., 16; Pevelor v. Pevelor, 54 Texas, 53; Herbert v. Herbert, 59 S. W., 594; Giddings v. Steele, 28 Texas, 742, 91 Am. Dec., 315; Northcraft v. Oliver, 74 Texas, 166, 11 S. W., 1122. It clearly appears from the allegations in the supplemental petition, and in the proof offered by the appellees, that the foundation

of this claim against Berry rests upon the assumption that a portion of the estate of Mrs. Berry had been applied to the payment of one of Berry's personal debts, the Bemis judgment. If this be true, then the Berry children, as the devisees of their mother, would clearly have the right of reimbursement and would ultimately be entitled to a judgment against Berry for the amount of the debt so paid, in the event he failed to make reparation in due time. Tison v. Gas, 46 Texas Civ. App., 163, 102 S. W., 751; Richardson v. Hutchins, 68 Texas, 89, 3 S. W., 276. The facts upon which they rely as showing this appropriation of their property to the payment of Berry's debt, consists of the sale of the timber to Eglin Brothers by Duke, for which the latter received the sum of $10,000, the decree of the court directing the application of this sum as a credit upon the Bemis debt, then held by Duke, and the further decree fixing a lien in Duke's favor against the land for the remainder of the debt, amounting to $1906. · Pretermitting for the present, any discussion of the binding force of those features of the judgment last referred to, and considering the Bemis debt as one having been satisfied in full from the proceeds of the children's land, it does not follow that this suit could now be maintained against Berry for reimbursement. This debt would occupy the same status as any other debt due the estate. When collected, the proceeds would be subject to Berry's control as executor in the payment of claims, or for distribution upon final settlement. The relations of an executor to his testator are not distinguishable from those of other creditors and debtors. Rev. Civ. Stat., art. 2011; Timmins v. Bonner, 58 Texas, 554; Ingram v. Maynard, 6 Texas, 131. A debt or obligation incurred by the executor during the administration is not different from one he owes before assuming this relation, in so far as it affects the right of the heirs or devisees to institute a suit for its recovery before the close of the administration. It is not claimed that Berry's indebtedness grows out of waste or improper management of the estate; on the contrary, the transaction upon which the principal portion of the claim for reimbursement rests, is one, the validity of which has been expressly ratified and adopted by the appellees. The balance of the appropriation for which he is sought to be held responsible, results directly from a decree of the District Court, rendered over his objection, fixing a lien against the land for that balance, and directing its payment in the due course of administration. Under the authorities previously cited, the devisees cannot, during the administration of the estate, maintain against the executor an action for recovery of such a debt. We therefore think the court erred in rendering the personal judgment against Berry.

We come now to the consideration of the assignments of error presented by Duke. Several are urged in his brief, but we will only discuss the one wherein he complains of the action of the court in rendering judgment against him in favor of the plaintiffs, for the value of the timber. The judgment referred to is that portion of the court's general judgment directing the application of the $10,000, received by Duke from Eglin Brothers for the sale of the timber, as a credit on the Bemis debt. The question is, was this a proper decree to render under the facts disclosed by the record, and did the court have

power? The testimony shows that Duke had purchased the land, including the timber, from Berry, the latter purporting to convey individually and as the independent executor of his deceased wife's will; and the consideration for this conveyance was $10,528, to be applied to the payment of the Bemis judgment, which had theretofore been recovered against Berry and against the estate which he was administering. This application of the purchase price was expressly provided for in the conveyance in a manner which leaves no room to doubt that the extinguishment of that debt was the consideration, or the principal part at least, for making this conveyance. Duke sold the land back to Berry, reserving in his deed the timber above ten inches in diameter. Afterwards, he sold to Eglin Brothers for $10,000, the timber so reserved, allowing eight years for its removal. The granting and habendum clauses of the deed from Berry to Duke were couched in the usual phraseology employed in conveyances of real estate. The timber passed to Duke as a part of the realty, no separate mention of it being made in the deed. At the instance of the appellees, this conveyance was by the court annulled "in so far as the land is concerned." The right of the appellees to have the money received by Duke from Eglin Brothers in payment for the timber applied in the manner done in this judgment, depends upon their right to urge this transaction as the basis of an equitable set-off against the Bemis mortgage now held by Duke. As one of the essentials to make this right available to the Berry children in the present case, it must appear that, by the act of Duke, they were deprived of their right to the timber; for if they were not, then in the absence of any agreement to make such an application of the money, there would not exist any legal or equitable grounds for such judicial compulsion. If, by the sale, Duke did not invest the Eglins with some legal right which they might assert against the devisees, or the executor in his fiduciary capacity, then Duke did nothing for which he could be compelled to account. It is not contended that the Eglins acquired by the conveyance from Duke any title which the devisees, or the executor were bound to recognize. Neither is it alleged or shown that by that transaction the land had been despoiled of the timber, and that any damage to the realty had occurred. But the devisees allege in their petition, that they have elected to ratify and adopt the sale of the timber, because the Eglins had paid to Duke a reasonable price for the same. When we consider the fact that the conveyances between Duke and Berry are held to be void for the lack of power to convey, and the further fact, that the Eglins do not rely upon a purchase for value without notice, but join in the assault upon the legal authority of Berry to act independently of the Probate Court, the conclusion follows that the present right of Eglin Brothers and their vendees to hold the timber, rests solely upon the consent of the Berry children given at a time subsequent to the sale by Duke. These children could not, by the mere force of their own consent, invest the Eglins with a title and then call upon Duke to credit their debt with the consideration he had wrongfully obtained. Their parting with their title to the timber was the result of their voluntary act. It is true that Duke sold, or attempted to sell the timber, and did receive a consideration for it. If by this he conveyed nothing to

his vendees, they only had a right to complain, so long as the timber remained upon the land, and there was no injury to the realty. Upon being ousted, they might have proceeded against Duke and Berry for damages for breach of warranty. There are no allegations charging that either Duke is insolvent, or is unable to respond to the full amount of the loss that might be sustained by their vendees on account of a failure of title. If the only contract by which Duke agreed to extinguish the Bemis debt be not allowed to stand, he could not be compelled to extinguish any part of it contrary to his agreement, in the absence of some legal or equitable grounds therefor. None are shown to exist, and we think the court erred in not so holding.

But there is another and stronger reason for reversing this portion of the judgment: that is, the want of jurisdiction in the District Court. When the conveyance evidencing the contract between Berry and Duke, by which the Bemis debt was to be extinguished as a claim against the estate of Mrs. Berry, was set aside, that debt became in the hands of Duke, to whom it had been transferred, a valid claim against a specific portion of the estate. Conceding that Duke was then indebted to the estate for the purchase money for which he had sold the timber, this debt existed as an independent obligation, which he might be compelled to allow as a credit on his claim against the estate when payment was demanded from that source. Walters v. Prestidge, 30 Texas, 65. But the compulsion could only be exercised by the District Court after his claim had been presented to and rejected in whole or in part by the executor. Thompson v. Branch, 35 Texas, 21; Walters v. Prestidge, supra; Western N. & I. Co. v. Jackson, 77 Texas, 626, 14 S. W., 305; Tiboldi v. Palms, 38 Texas Civ. App., 318, 78 S. W., 726; Red River Bank v. Higgins, 72 Texas, 68, 9 S. W., 745. See also Revised Civil Statutes, art. 2082. In order to subject any portion of the mortgaged land to the payment of his debt, Duke must present his claim, in compliance with the statutory requirements. If it is allowed by the executor, the County Court where the administration is pending is the only tribunal empowered to determine what, if any, offsets, credits or payments should be deducted. In this controversy, the District Court clearly undertook to adjudicate a matter exclusively within the jurisdiction of the County Court of Marion County.

The right of Duke to any commissions for selling the timber to the Eglins must be adjusted in the court where his rights, as a creditor of the estate, are determined.

The remaining assignments of error not disposed of by what is said in the foregoing discussion, are overruled.

The right of the Eglins and their vendees to a judgment quieting title to the timber, is subject to conditions. The timber is still a part of the estate of Mrs. Berry in process of administration, and, as such, is still subject to the lien with which Mrs. Berry encumbered it, and to other debts that may be due to other creditors. The deed from Berry to Duke, which was canceled by the court, conveyed both the land and timber in the general terms employed in deeds to real estate. The court, however, undertakes to limit the effects of the can-

cellation to only one of the elements of the realty—the land less the timber of a certain size. In this way, it was probably considered that the title to the timber obtained through Berry's conveyance, was left undisturbed. The subtility of such a differentiation is beyond our ability to appreciate, and, so far as we know, is without judicial precedent. When the timber is conveyed as a part of the realty, and in the very terms that convey the land, and when there is no contemporaneous or previous separation of the ownership, annulling the conveyance carries the title to all of that which the deed conveyed to the same level. According to our construction of the will, Berry had no more authority to convey the timber than he had to convey the land. In so far as the Eglins' rights must depend upon that conveyance, they are without any support. Neither are they entitled to any judgment that would restrict or bar the subjection of the timber to the payment of the Bemis judgment, or the debts of the estate of Mrs. Berry. The Berry children could not, by their consent, remove this portion of the property belonging to the estate from the jurisdiction of the Probate Court for purposes of general administration. It is true that should Duke undertake to subject that particular property to the Bemis debt, the Eglins and their vendees might be entitled to some relief as against him; but that question is not before us.

It follows, from what we have said, that the judgment of the court must be modified in many respects. We accordingly make the following modifications: The judgment is affirmed as to that portion removing cloud from title, and cancelling the deed from Berry to Duke and from Duke to Berry. In all other respects, except as to costs, it is reversed and here rendered accordingly.

ON MOTION FOR REHEARING.

Separate motions for rehearing have been filed by Duke and Berry, and by the appellees, the children of Mrs. Berry, Eglin Brothers and their vendees. We deem it unnecessary to further discuss the questions presented in the motions of Berry and Duke.

The appellees insist that we erred in refusing to affirm that portion of the judgment of the trial court, which directed an application of the $10,000 received by Duke from Eglin Brothers, as a credit on the Bemis mortgage, and thereby discharging that much of the property from the mortgage lien. In the original disposition of the case, we based our reversal of this portion of the judgment upon the ground that the District Court was without jurisdiction to make such an order, it appearing from the pleadings and from the evidence, that an administration upon the estate of Mrs. Berry, to which the property subjected to the mortgage belonged, was still pending in the County Court of Marion County. It is now urged that, the District Court having properly assumed jurisdiction of the cause of action, this particular relief was a part of that to which the appellees were entitled in disposing of all the issues involved in the main controversy. In support of that proposition reference is made to the following cases:—Chapman v. Brite, 4 Texas Civ. App., 506, 23 S. W., 514; Hall v. Hall, 11 Texas, 554; Bank v. Cresson, 75 Texas, 298, 12 S. W., 819; Mitchell v.

Rucker, 22 Texas, 67; Dickenson v. McDermott, 13 Texas, 248. Most, if not all of these, were suits by administrators seeking judgments upon claims due the estates then in process of administration, in which the defendant was permitted to plead as an offset, a debt due him from the estate or from the decedent. This was allowed upon the ground that the counter-claim operated as a *pro tanto* extinguishment of the claim sued on, and to that extent was a legal defense to the action. Mitchell v. Rucker, supra. But the following cases seem to place some limitations upon the liberality of the indulgence there accorded: Atchison v. Smith, 25 Texas, 230; Alford v. Smith, 40 Texas, 85. In the last case cited, after referring to the practice of permitting a party when sued by an administrator to plead a claim held by him as an offset, the court said: "While, however, this is the well established general rule, it has been heretofore held by this court, that this rule was not without exception, and that sometimes, cases under peculiar circumstances would arise, rendering the interposition of the equitable jurisdiction of the District Court absolutely necessary to prevent great hardship and oppression. Otherwise, the very law enacted for the benefit of the creditor of the estate, and intended to enable him to secure the speedy payment of his claim, might be wantonly perverted to his injury, if not utter ruin." But admitting that the principle invoked by the appellees is entitled to all the latitude given it in the cases cited, it is not clear how that principle can be made applicable to the facts here under consideration. We may concede the correctness of the proposition that "the District Court having acquired jurisdiction of the cause, its jurisdiction was co-extensive with all questions which were necessary and proper to be decided in the final determination of the subject-matter in litigation between the parties," yet it does not follow that the result here would be different. The question still remains,—was this an issue necessary and proper to be decided in the determination of the subject-matter of this suit? An answer to that question will necessitate an inquiry into the nature and purpose of this action. An analysis of the original petition upon which the case was tried discloses two distinct groups of parties plaintiff, asserting title to separate and distinct portions of the property involved. (This defect does not appear to have been called to the attention of the trial court). There were the children of Mrs. Berry, who claimed the land and only a portion of the timber, while the Eglins and their vendees claimed the remaining timber on a part of the land. None of the property was claimed by these two sets of plaintiffs in common. There being no community of interest in the subject-matter of the suit, there was no community of rights in the relief sought. To simplify the inquiry, we shall consider each of the two groups separately, with reference to the rights asserted and relief sought. A careful examination of the petition shows the following, as the substance of the grievances alleged:

On the 9th day of December, 1907, J. H. Berry, assuming to act individually and as the executor of the estate of Mrs. Berry, executed a conveyance to C. T. Duke. On the same day, as a part of the same transaction, Duke reconveyed the land to Berry, reserving the timber.

This conveyance and reconveyance was the result of a conspiracy to defraud the plaintiffs, and invest Berry with the title to the land.

It is charged that the above mentioned conveyances were void for the reason that Berry owned no title or interest in the property, and was not the independent executor of the will of Mrs. Berry.

It is claimed that as a part of the consideration of the transfer from Duke to Berry, the latter executed and delivered to Duke two promissory notes for $3,039 each, payable to the order of Duke in one and two years thereafter, in which liens were attempted to be given on the property involved, and charging that these constituted a cloud upon the title.

It is averred that Bemis was the owner and holder of a note 'for $7085 secured by a lien on the premises described, of which Duke afterward became the equitable owner and holder; that while such owner and holder, Duke sold the timber situated upon the land involved in this suit to Eglin Brothers, for the sum of $10,000; that the consideration for the sale of the timber was in excess of the amount of the Bemis debt, and is sufficient to fully pay it.

It is also alleged that the timber was sold to Eglin Brothers for a fair consideration and the purchase price applied to the settlement of the Bemis mortgage, or debt; that, by reason of the fact that the mortgage is upon the records of Harrison County, apparently unsatisfied, it constitutes a cloud upon the title of plaintiffs to both the land and the timber, and an injunction restraining further transfers is sought during the pendency of this suit.

The prayer for relief asks for an injunction restraining the defendants from making any transfers of the notes, claims and judgment; for the recovery of the land and timber, and a judgment removing the cloud from their titles to the same; that whatever claims may be due the defendants after applying the $10,000 to the payment of the Bemis debt, be determined in this suit; that all claims of the defendants to the premises, liens, notes, etc., affecting the title, be canceled, and for general relief.

In their motion for rehearing, appellees do not point out which group of them is aggrieved by the ruling of which they complain; the objection is urged by all. We shall first consider the Eglins and their vendees with reference to the subject-matter of the suit, and their rights to the relief denied them. It is manifest that they can claim no rights by reason of being associated as parties plaintiff with the Berry children in this suit, which they could not have asserted in an independent action. Let us assume, therefore, that the suit was instituted by them alone; what would then be the wrongs of which they might complain, and what the relief to which they would be entitled under the same character of pleading? Clearly, they could not claim injury from the transfers between Duke and Berry, which are here sought to be canceled. On the contrary, with these deeds canceled they would be without the vestige of a title to the timber. They could not ask that the Bemis mortgage be canceled as a cloud upon their title, because the evidence shows that there is a sum still due, and no tender of payment is made. They have alleged that they purchased from Duke while he was the owner of the Bemis mortgage. It is contended

by counsel in the motion that we must treat Duke, in making this sale, as a mortgagee in possession. If this be correct, then the sale and payment of the purchase money to Duke *ipso facto* discharged the timber from the burden of the lien, and neither Duke nor any subsequent holder can hereafter assert it against that portion of the property. 2 Daniel on Negotiable Instruments, sec. 1233a; 7 Cyc. 1038. The evidence shows that Duke sold to them with a warranty; that the amount of the payment he received was insufficient to discharge the entire debt, and that he is now entitled to a balance of nearly $2000. It is not claimed that Duke is insolvent, or that he is attempting to again subject the same property to the payment of his debt. Upon the whole pleading, we think the Eglins and their vendees have failed to state grounds for any sort of relief, and upon the whole case it appears that they must rely upon the grace of the Berry children for their enjoyment of the timber rights which they now claim. From what has been said, it seems to follow that the compulsory application of the $10,000 as a payment on the Bemis debt was not a part of the relief to which these plaintiffs were entitled.

Are the Berry children in any better attitude to complain? As stated in the original opinion, the rights of the Eglins to the timber depended upon the voluntary acquiescence of these plaintiffs in the sale by Duke. If their contention concerning the nature of the will of Mrs. Berry and the extent of the powers it conferred on Berry as executor be correct, then the sale by Duke to the Eglins was not voidable merely, but absolutely void. In that view, the children occupy the position in this suit of attempting to make Duke pay them the consideration which he wrongfully collected from the Eglins. The purpose of the suit on their part was to cancel the deeds passed between Berry and Duke, and clarify their title to the land. In so far as the cancellation of those deeds was concerned, that relief was not contingent upon any other thing being done. They were not entitled to have the Bemis mortgage canceled, because a portion of it was still unpaid, even after making the application of the $10,000, and no offer was made to pay this balance. We do not understand that a debtor is in any position to invoke the authority of a court to adjust the application of payments till he tenders full settlement of the debt, or till his creditor, in seeking satisfaction, denies a just application of some fund which equity would accord to the debtor. Neither of those situations is presented by the facts and pleadings in this case. Moreover, the Berry children joined in the averment that the money paid by the Eglins had been applied on this mortgage. It is true appellees have alleged that Duke converted the timber, but the evidence does not sustain this allegation. All that Duke did with reference to the timber was to execute a deed conveying it to the Eglins. If the timber is to be regarded at that time as a part of the freehold, it was not susceptible of being converted by that manner of dealing with it. Willis v. Morris, 66 Texas, 632, 1 S. W., 799. If it was personalty, the Berry children were not, by Duke, deprived of its possession. The testimony shows that whatever portion of the timber had been cut and removed, had been taken by the Eglins or their vendees, with the consent of the Berry children. If our conclusions upon this feature of the case are correct, there is

no merit in the assignment claiming that we erred in refusing to affirm the personal judgment against Berry.

The motion is overruled.

*Affirmed in part, and in part reversed and rendered.*

Writ of error refused.